## Shehan v. Shehan

(Decided February 12, 1913.)

### Appeal from Nelson Circuit Court.

1. Divorce—Care and Custody of Children.—Under the common law, generally, the father was entitled to the custody of his infant child; but the more modern doctrine, as well as section 2123 of the Kentucky Statutes, requires the chancellor in divorce cases to look to the happiness, welfare and comfort of the child, and to confide its keeping to that parent whose ability, time and attention can best be devoted to its care and welfare.

2. Infants—Judgment in Divorce Cases.—If, for any reason, the best interests of the infant should require the modification of a judgment granting the custody of the infant to either parent, the circuit court not only has ample power under section 2123 of the Kentucky Statutes, but it is its duty, to revise and alter the judgment so as to subserve the best interests of the infant.

3. Divorce—Alimony—Elements Considered in Fixing Amount.—Where the husband is young, in good health, and able to work,

and his divorced wife has no property or means of support, his wife, upon obtaining a divorce from him, is entitled to alimony, although he have no present estate; and his contemplated probable earnings, and his probable accretions of wealth from other sources, may be the basis of such allowance.

4.    Divorce—Alimony—How Amount of Determined.—In estimating the allowance of alimony, there is no fixed standard. The matter is within the sound judicial discretion of the chancellor, and is to be regulated by a number of circumstances that properly enter into the consideration; such as the size of the husband's estate; its productiveness; his income and earning capacity; his age, health and ability to labor; the age, health and situation of the wife; and the particular cause for which the divorce was granted the wife.

W. C. McCHORD, W. F. GRIGSBY and F. E. DAUGHERTY, for appellant.

NAT. W. HALSTEAD and MORGAN YEWELL, for appellee.

OPINION OF THE COURT BY JUDGE MILLER —Affirming.

The appellant, Eugene B. Shehan, and the appellee, Hallie Tichenor Shehan, were married on December 24, 1907. He is about 27 years old, while she is some four years younger. At the time of the marriage appellant lived with his father and mother upon a farm in Nelson County, containing 140 acres, about ten miles from town; while appellee was the only daughter of John Tichenor and wife, who likewise lived upon a farm near Bardstown. Upon the marriage of appellant, his father and mother removed to Springfield and gave the use of the farm to appellant and his wife. In perhaps a year, appellant and his wife concluded to give up farming, and moved to Bardstown, where he engaged in a mercantile business. This venture resulted disastrously from a financial point of view, and, at the end of six months they moved back to the farm. A son, Eugene, Jr., was born to them on November 25, 1909, who was not quite three years old at the time this case was tried. Differences unfortunately arose between appellant and his wife, without any sufficient reason, so far as one can see. They gradually grew more acute until finally on November 22, 1911, she left him and returned to her father's residence with her child. On the same day she instituted this action for a divorce, upon the statutory grounds of confirmed drunkenness and cruel treatment.

A large amount of testimony was taken, and on June 15, 1912, the chancellor entered a judgment divorcing the

appellee from her husband, the appellant, giving her the care, custody, and control of their infant child, Eugene B. Shehan, Jr., giving the appellant, however, the right to see his child and to have it with him all of every Monday during each month from 9 o'clock A. M. until 5 o'clock P. M.; and, for the purpose of carrying out that portion of the judgment, the appellee or her father was directed to deliver the child to the appellant at the Newman House in Bardstown on or before 9 o'clock on each of said days. The judgment contained this further clause:

"It is further adjudged by the court that in case the child should be taken sick, that then and in that event the plaintiff shall notify defendant of said fact, and defendant shall have a right to go and visit his said child when sick, at the home of plaintiff, at her said father's or wherever it is at said time, and be with the said child while sick at said place. The court reserves the right in the future to modify or change this order with reference to the custody and control of said child."

Appellee was also given judgment for $500.00 alimony for her support and maintenance; $12.50 per month for the support and maintenance of her child; $120.00 as fees for her attorney; and the costs of the action, which are heavy.

Under section 950 of the Kentucky Statutes this court is expressly forbidden to reverse a judgment granting a divorce, but it may review the judgment of the circuit court, in a divorce case, in other respects; and, from so much of the judgment as gives the custody of the child to the appellee, and grants her alimony, the defendant prosecutes this appeal.

Under the common law, generally, the father was entitled to the custody of his infant child; but the more modern doctrine requires the chancellor to look to the happiness, welfare and comfort of the child, and to confide its keeping to that parent whose ability, time and attention can best be devoted to its care and welfare. Section 2123 of the Kentucky Statutes expressly provides that in making orders for the care, custody and maintenance of minor children of divorced persons, the court shall, in all cases, have the care and custody, the interest and welfare of the children, principally in view.

In Irwin v. Irwin, 96 Ky., 324, where the chancellor

had confided the custody of the children to the mother, this court said:

"The absolute dominion on the part of the husband over the person of his wife and his custody of the children when separation takes place, recognized by the rule of the common law, is neither sanctioned nor approved by the enlightened jurisprudence of the present day, and the chancellor, when a separation has been ordered, will look to the comfort and happiness of the children, and confide their keeping to that parent whose time and attention can best be devoted to their care and welfare. This the chancellor has done, and retains the case on the docket that he may make such orders as to the care of the children as circumstances require. The father or the children should be permitted to see each other once a week, and as they are advancing in years he should be consulted as to their education, and in reference to any matter of moment affecting their interests."

And, in response to a petition for a rehearing, which asked the court to give the custody of the son to the father, the court declined to do so, saying:

"In the opinion below the appellant was permitted to see his children certain hours on each day; this we thought not only inconvenient to both parties, but unnecessary, and supposed the chancellor below would fix the time and place where at least once a week the appellant could see his children, and certainly not at the home of the wife's father.

"The petition now asks this court to give the custody of the son to the appellant. This we are not inclined to do."

The parents of both the appellant and appellee stand well in the community in which they live, and are good, reliable and substantial people. Nothing has been said derogatory of the character of either of them. Appellee and her child live with her parents; and, if appellant is given the custody of the child, he will keep it with his parents, where he now lives. Under conditions like these, the rule is almost universal that the custody of a child of tender years should be given to its mother. The judgment in this case as to the time and place where the father shall see his child is reasonable, and substantially complies with the rule as laid down in the Irwin case.

If, for any reason, the best interests of the infant

should require a modification of the judgment, in any, respect, in so far as it relates to the infant, the circuit court not only has ample power under section 2123 of the Kentucky Statutes, but it would become its duty to revise and alter it.

The parents should, in all cases, recognize the fact that the statute subordinates their interest in their child to the child's interest and welfare.

It is insisted, however, that the judgment for $500.00 alimony is unreasonable and excessive, in view of the estate of the appellant, and his ability to earn money. His only estate consists of a one-half remainder interest in his mother's farm of 140 acres, which is worth about $8,000.00. His mother being 63 years of age, her present interest in said estate is estimated at $5,300.00, leaving $2,700.00 to be divided between appellant and his sister, or $1,350.00 to each.

In treating of the elements to be considered in awarding alimony, this court used the following language in Muir v. Muir, 133 Ky., 129, 4 L. R. A. (N. S.), 909:

"Appellant is a man not lacking in understanding or education. Barring the ailment referred to, he is in good health, and is able to work, but, it seems, is not, or has not been, a successful business man. This, however, is probably due more to his habits than lack of ability. Appellee has no property, no means of support. Her father is a poor man. Her mother has no property. With this situation, what relief should the chancellor have decreed? Appellant contends nothing. Appellee, dissatisfied with the decree fixing her alimony, has prayed a cross-appeal to have it increased.

"The statute is (section 2122 Ky. St., 1903): 'If the wife have not sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as shall be deemed equitable.' But this does not mean that, if the husband have no present estate, his wife shall not be entitled to alimony. His contemplated probable earnings may be the basis for such allowance. Canine v. Canine, 16 S. W., 367, 13 Ky. L. R., 124. Nor do we perceive why, if probable earnings, as a reasonable expectation, may properly be considered, probable accretions of wealth from any other source may not also be considered.

"In estimating the allowance of alimony, there is no fixed standard. The matter is within the sound judicial

discretion of the chancellor. It will be regulated by a number of circumstances that properly enter into the consideration. Among them is the size of the estate of the husband, and its productiveness; his income and earning capacity; his age, health and ability to labor; the age, health and station of the wife; and, it may be added, that the particular cause of the divorce may properly enter into the consideration, as will be illustrated further along."

See also Snedager v. Kincaid, 22 Ky. L. R., 1347, 60 S. W., 522.

And, in considering the same question in Sebastian v. Rose, 135 Ky., 205, we further said:

"Just what property appellee then had is not satisfactorily shown. But it is shown that he had youth, health, strength, and business ability, no mean assets in these times. Many a man begins life with the charge of a family with no more, yet achieves success. The dependent condition of the wife, the helplessness and just needs of their child, both imposing legal and moral obligations upon the husband and father not discharged by divorce, nor diminished by his abandonment, or want of affection, are elements which enter into the court's consideration in fixing the amount of alimony. Not only what appellee had when the action was begun, but what he has now, and his reasonable expectancy (Muir v. Muir, 92 S. W., 314, 28 Ky. L. R., 1355, 4 L. R. A. (N. S.) 909), and his earning capacity (Canine v. Canine, 16 S. W., 367, 13 Ky. L. R., 124) may also be considered, and should be, in ascertaining the just amount necessary to maintain appellant and her child comfortably, and to educate the child fittingly, and the probable ability of appellee to pay it. This is exacted of appellee not as a penalty alone for his fault (though that may also be considered), but is in discharge of his contractual, and more particularly of his social, obligation imposed on him by law as an incident of manhood and the head of a family."

Likewise, in the case at bar, appellant is a young and vigorous man, with no other obligations resting upon him. It is his duty to support his child, and as we read the record, there is no serious objection to that portion of the judgment. The attorneys' fee is reasonable considering all the circumstances.

Under all the facts of this unfortunate case, we are

satisfied that the judgment of the chancellor is substantially correct.

Judgment affirmed.