CASE 33.—ACTION BY SAMUEL N. JOHNSON AGAINST THE
LEXINGTON RAILWAY COMPANY FOR DAMAGES,
FOR PERSONAL INJURIES.—Dec. 2, 1909.

## Lexington Ry. Co. v. Johnson.

Appeal from Fayette Circuit Court.

WATTS PARKER, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Reversed.

1.  Carriers—Negligence—Gross Negligence— Punitive Damages.
    —The act of street car men in knowingly operating on a
    steep incline a car with a useless brake, and relying entirely
    on the reverse electric current to control the car, is gross
    negligence, authorizing punitive damages for injuries to a
    passenger in a runaway because the electric current was cut
    off while the car was descending the incline.
2.  Carriers—Injuries to Passengers—"Gross Negligence"—In-
    structions.—In an action for injury to a street car passenger,
    an instruction that gross negligence is that which evinces a
    reckless disregard of or indifference to the safety of others
    is favorable to the street railroad company, as "gross negli-
    gence" is the absence of slight care.
3.  Carriers—Personal Injuries—Punitive Damages —Excessive
    Damages.—Where street car men knowingly operated on a
    steep incline a car with a useless brake, and relied entirely
    on reverse electric current, and a collision occurred be-
    cause the current was cut off while the car was descending
    the incline, a verdict awarding $1 000 as punitive damages
    was not excessive.
4.  Trial—Right to Open and Close.—Where, in an action for in-
    juries to a street car passenger, plaintiff sought to recover
    punitive damages because of gross negligence, and the street
    railroad offered to confess judgment for a sum less than was
    claimed in the petition without confessing its guilt of gross
    negligence, the burden of proof was on plaintiff, and he
    was entitled to open and close.

5. Damages—Personal Injury—Special Damages.—In an action for personal injuries, special damages, to be recoverable, must be specifically alleged.

6. Damages—Special Damages—Pleading.—An allegation of special damages in a blank sum amounts to no allegation of special damages and affords no basis for a judgment therefor.

7. Judgment—Erroneous Judgment—Correction.—Where, in an action for personal injuries, the jury awarded a specified sum for compensation and another for punitive damages and another for medical attention, the error in awarding the latter sum, arising from the insufficiency of the petition, would be cured by disregarding that portion of the verdict, and judgment should be rendered for the other two sums, as directed by Civ. Code Prac. section 386, providing that judgment shall be given for the party whom the pleadings entitle thereto.

OPINION OF THE COURT BY JUDGE BARKER—Reversing.

The appellee, Samuel N. Johnson, while a passenger upon one of the cars of the Lexington Railway Company, was injured in a collision between the car upon which he was riding and the passenger train of the Chesapeake & Ohio Railroad on Broadway street in Lexington, Ky. To recover damages for his injuries he instituted this action against the Lexington Railway Company, alleging that the collision in which he was hurt was the result of the gross negligence of the employes of appellant in charge of the car upon which he was riding. The railway company filed an answer admitting the negligence of its employes, and offering to confess judgment for $500, to be in full of the damages sustained by the plaintiff. It denied, however, gross negligence, and that plaintiff was entitled to recover damages for his injuries for a greater sum than $500. The trial of the case resulted in a verdict for the plaintiff in the sum of $1,600, which the jury divided as follows: $100 for medical attention; $500

for compensation; and $1,000 for punitive damages. Upon the return of this verdict, the trial judge entered judgment for $1,600, and the defendant (appellant) is here on appeal.

The salient facts of the injury complained of are as follows: The car upon which appellee was riding is known as the "train car," because it meets the trains coming in on the Cincinnati, New Orleans & Texas Pacific Railway at its station near the southern limits of the city of Lexington. On the day of the accident, the employes knew that the brake by which the speed of the car was regulated was entirely useless because of some defect which is not explained in the record, and, as a result of this defect, it was necessary, in order to stop the car, to reverse the current of electricity which constituted the motor power. Between the railroad depot and the main part of the city of Lexington there is a steep incline on Broadway street, at the foot of which the trains of the Louisville & Nashville and the Chesapeake & Ohio Railroads cross the street. Appellee had come in on the Cincinnati, New Orleans & Texas Pacific Railway, and boarded the street car with several other passengers, for the purpose of riding into town. The car started, and it was at once apparent that the brake was entirely useless, and that, in order to control the speed of the car while going down the steep incline on Broadway, it was necessary to rely entirely upon the reverse current of the electricity. This, as said before, was well known to those in charge of the car, and they also knew that at the bottom of the hill they were liable to encounter the crossing trains of the Louisville & Nashville and Chesapeake & Ohio Railroads. They further knew that, if anything occurred by which the current was

cut off while the car was descending the hill they had no means by which to stop its headlong passage, or by which they could protect the passengers from injury if a collision was imminent either with a crossing train or any other heavy vehicle which it might encounter on the downward passage. The employes seem not even to have taken the precaution to notify those in charge of the power house of their precarious condition, so that extra precaution might be taken to keep the current strong and regular. As soon as the car started down the hill on Broadway street, for some reason not explained the current was cut off, and the car at once started, under the influence of the law of gravitation, to run swiftly down the incline; those in charge having no power to control its rapid descent. At this time the passenger train of the Chesapeake & Ohio Railroad was crossing Broadway street at the foot of the incline, and appellant's flying car crashed into it, overturning the baggage car of the crossing train, and more or less injuring all of the passengers on board appellant's car. It seems to us that this conduct on the part of the employes of appellant was not only grossly negligent, but criminally negligent. To conceal from the passengers the defect in the brake, and then run the car down a steep incline, depending upon the uncertain current of electricity as the only protection against danger to life or limb, cannot be correctly characterized by any term less than "gross negligence." This being true, the appellee was entitled to an instruction that the jury might award punitive damages.

The court, on the subject of punitive damages, instructed the jury as follows: "Gross negligence is that kind of negligence which evinces a reckless dis-

regard of, or a reckless indifference to, the safety of another or others.'' Of this instruction appellant complains. ''Gross negligence'' has often been defined as the absence of slight care, and, if there be any substantial difference between this definition and the instruction given by the court, it is a difference of which the plaintiff might complain, but not' the defendant. It seems to us that the instruction of the court accurately defines the degree of negligence of which the appellant's employes were guilty. Appellant insists that the court should have defined ''gross negligence'' in this case as in L. & N. R. R. Co. v. McCoy, 81 Ky. 413, which is as follows: ''In the management of a railroad, or any department thereof, 'gross negligence' is the failure to take such care as a person of common sense and reasonable skill in like business, but of careless habits, would observe in avoiding injury to his own person or life under circumstances of equal or similar danger to those which may be under investigation.'' A comparison of the instruction complained of with that which appellant insists should have been given will show that the difference was in favor of appellant, and not against it, and, while appellee might have complained of the instruction given, appellant cannot.

We do not think the amount of the punitive damages—$1,000—was excessive. Such negligence as this record discloses should be punished, and we are not disposed to say that $1,000 is too great a sum as punitive damages.

The appellant did not have the burden of proof upon the trial, and was not entitled to open and close the case. It is true, it offered to confess judgment for $500; but this was not as great a sum as that

claimed in the petition, nor did the petition confess to the guilt of gross negligence, and therefore the burden of proof was upon plaintiff to prove the disputed part of the claim in the petition. Louisville & Eastern Ry. Co. v. Mann, 104 S. W. 362, 31 Ky. Law Rep. 986; Southern Ry. in Kentucky v. Steele, 123 Ky. 262, 90 S. W. 548, 28 Ky. Law Rep. 764; Id., 123 Ky. 262, 94 S. W. 653, 29 Ky. Law Rep. 690.

The appellant also insists that the court erred in giving judgment for the sum of $100 awarded in the verdict for medical services. This objection is based upon the fact that the petition alleges, in regard to his outlay for medical services, as follows: "That plaintiff has been compelled to pay for medical services on account of said injuries the sum of $——— and the further sum of $——— for medicine." We have uniformly held that, in order to recover special damage, it must be specifically alleged; and we have also frequently held that, where the special damage is alleged to be a blank sum, this amounts to no allegation for special damages at all and affords no basis for a judgment. Lexington Ry. Co. v. Britton, 130 Ky. 676, 114 S. W. 295; Central Ky. Traction Co. v. Chapman, 130 Ky. 342, 113 S. W. 438; C. & O. R. R. Co. v. Crank, 128 Ky. 329, 108 S. W. 276; 32 Ky. Law Rep. 1202, 16 L. R. A. (N. S.) 197; L. & N. R. R. Co. v. Dickey, 104 S. W. 329, 31 Ky. Law Rep. 894; Macon v. Paducah Street Ry. Co., 62 S. W. 496, 110 Ky. 687; Jesse v. Shuck, 12 S. W. 304, 11 Ky. Law Rep. 463. As the jury in its verdict specifically set forth the amount alleged for medical services, the plaintiff was not entitled to a judgment for that amount on the verdict. The court should have disregarded that portion of the verdict and entered judgment only for $1,500. Sec-

tion 386 of the Civil Code of Practice is as follows: "Judgment shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him." See, also, Chaney v. Bevins, 96 S. W. 1129, 29 Ky. Law Rep. 1219.

Inasmuch as the court entered a judgment for $1,600, when it should have entered one for only $1,500, the judgment must be reversed, with instructions to the court below, when the case returns, to enter a judgment in favor of the plaintiff for $1,500; and it is so ordered.

RESPONSE TO PETITION FOR REHEARING BY JUDGE LASSING:

The opinion herein directs that a judgment be entered in the lower court in favor of plaintiff, Samuel N. Johnson, for $1,500. This judgment will of course bear interest from the date of the trial when the verdict in favor of plaintiff for this amount was rendered. Damages are only awarded upon the affirmance of a judgment upon appeal, and as the judgment appealed from was for $100 more than it should have been, it had to be reversed, and hence no damages can be allowed.

Costs follow the judgment, and the defendant will have to pay all costs in the circuit court, and the plaintiff will have to pay all costs in this court.

The petition for a rehearing is overruled.